UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CYNTHIAL J. GILMAN,                                       :

                          Plaintiff,                        :

               -against-                               :    **MEMORANDUM AND ORDER**

ROBERT MCCARTHY, ALVAREZ &                                :    13-CV-1716 (KNF)
MARSAL, TRANSACTION ADVISORY
GROUP, LLC, MAROLLES, LLC, d/b/a                          :
BXL CAFÉ EAST, YVES MICHIELS, SHP
ENTERPRISES, INC. d/b/a ENVY, PETER                       :
PARK, SUK HUI PARK, 218 EAST 52ND
STREET RESTAURANT, LLC d/b/a                              :
NIALL'S ON 52ND, MATTHEW MORAN,
NIALL P. MORAN, XYZ CORPORATION:                          :
(names unknown) fictitious corporations,
 limited liability companies or partnerships,             :
JOHN DOE and MARY ROE, (name
unknown), fictitious persons,                             :

               Defendants-Crossclaimants.           :
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## BACKGROUND

Cynthia J. Gilman ("Gilman") commenced this action for damages resulting from injuries she sustained, on March 23, 2011, at approximately 4:15 a.m., while driving northbound on Route 9, in New Jersey, when Robert McCarthy ("McCarthy"), who was driving southbound on Route 9, crossed over into her lane of travel, striking her vehicle head-on. Gilman alleges that, commencing in the evening of March 22, 2011, and continuing through the early morning of March 23, 2011, McCarthy, employed as a managing director of Alvarez & Marsal Transaction Advisory Group, LLC, was acting within the scope of his employment when he and other employees entertained Francois Chadwick ("Chadwick"), a prospective employee, at the

1

following New York establishments: Marolles, LLC d/b/a BXL Café East ("BXL"), SHP Enterprises, Inc. d/b/a Envy ("Envy") and 218 East 52nd Street Restaurant, LLC d/b/a Niall's on 52nd ("Niall's"). Gilman asserts that, in the course of entertaining the prospective employee, McCarthy consumed alcohol and became intoxicated, achieving a blood alcohol concentration of approximately .24, three times the legal limit in New Jersey. Gilman alleges that, as a result of the March 23, 2011 automobile collision, she suffered permanent injuries, underwent a number of surgical procedures and will have to undergo future medical treatment. Gilman asserted the following claims in this action: (1) negligence against McCarthy and Alvarez & Marsal Transaction Advisory Group, LLC; (2) gross negligence against McCarthy and Alvarez & Marsal Transaction Advisory Group, LLC; (3) violations of New York's Dram Shop Act, General Obligations Law §§ 11-100[1] and 11:101, and Alcohol and Beverage Control Law Section 65,[2] against BXL, Envy, Niall's, Yvez Michiels ("Michiels"), Peter Park, Suk Hui Park, Matthew Moran, Niall P. Moran and Alvarez & Marsal Transaction Advisory Group, LLC, jointly and severally; and (4) negligent supervision and hiring against Michiels, Peter Park, Suk Hui Park, Matthew Moran and Niall P. Moran. Gilman also seeks punitive damages under New York's Dram Shop Act, as well as interest, costs and disbursements in this action. The defendants made crossclaims for contribution and indemnity. Before the Court is a motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, made by BXL

---

[1] Gilman asserted, improperly, a claim based on New York General Obligations Law § 11-100, which concerns compensation for an injury caused by the intoxication of a person under the age of twenty-one. Gilman did not assert that McCarthy was under twenty-one years of age on March 23, 2011.

[2] To the extent that Gilman asserted a claim based on New York's Alcoholic Beverage Control Act § 65, she cannot, as Section 65 "does not create a private right of action." Sherman v. Robinson, 80 N.Y.2d 483, 487, 591 N.Y.S.2d 974, 976 (1992).

and Michiels (the "movants") (Docket Entry No. 84), seeking dismissal of the plaintiff's claims and crossclaims made against them.

*Movants' Contentions*

The movants contend that no evidence exists that BXL served McCarthy alcohol while he was visibly intoxicated, and the plaintiff cannot defeat the motion by proffering expert testimony that McCarthy would have behaved in a visibly intoxicated manner at a certain blood alcohol concentration level. According to the movants, since the effect of alcohol differs from person to person, the number of drinks served to a person is not dispositive. The movants assert that "McCarthy was involved in an accident with plaintiff approximately seven and a half (7 ½ hours) after he left BXL." They maintain that "McCarthy was not visibly intoxicated when he left BXL and arrived at Envy," and the plaintiff would have to show that McCarthy was visibly intoxicated at the time of the last sale of alcohol to him. The movants contend that the plaintiff's claims "that BXL negligently supervised and hired its employees, cannot succeed,"[3] because "claims for negligent hiring, supervision or retention are generally not permitted when the agency relationship necessary for respondeat superior is established," and the plaintiff made no allegations that BXL employees acted outside the scope of their employment.

In support of their motion, the movants submitted Michiels' declaration. Michiels stated that he was the sole bartender on duty at BXL on the evening in question and was trained in alcohol awareness. McCarthy and his party were at the high-top tables across the bar and he could observe if a patron had too much to drink. The movants also submitted a declaration by Richard S. Blum ("Blum"), a physician licensed to practice medicine in New York and

---

[3] Gilman did not assert negligent supervision and hiring claims against BXL; rather, she asserted them against Michiels.

specializing in pharmacology and toxicology who was retained by the movants as an expert witness. Blum disagreed with the plaintiff's expert, Richard Saperstein ("Saperstein"), that "McCarthy would have reached a blood alcohol count (BAC) of 0.10% while he was at BXL," but even assuming he did, it does not follow that he would have exhibited signs of visible intoxication.

*Plaintiff's Contentions*

Gilman contends she "will not pursue the Sixth Cause of action for negligent supervision." According to Gilman, McCarthy indicated consistently at his deposition that he had more than five drinks at BXL, and "[o]nly McCarthy and Chadwick were at BXL continuously drinking from 4:30 until their 9:30 departure, which would have given them a total of five continuous hours to consume alcohol on an empty stomach at BXL." Gilman contends that "the timing sequence here is critical to understand what McCarthy's condition was immediately exiting BXL." According to the handwritten guest check at Envy, four persons were there at 9:40 p.m., and McCarthy withdrew cash from "the ATM machine at 21:40 or 9:40 p.m." Gilman asserts that, "[b]ased upon McCarthy leaving BXL at 9:30 p.m., that would be ten minutes post leaving BXL," and "McCarthy times his descent into blackout and intoxication with his trip to the ATM machine." Gilman asserts that McCarthy's testimony about his condition while at BXL and the testimony of Mark Sponseller ("Sponseller"), who was part of the group that entertained Chadwick, that "we all were drunk," create an issue of fact respecting whether McCarthy was visibly intoxicated at BXL. Gilman maintains that her expert's opinion should be given weight and, based on circumstantial evidence, the jury "could find that McCarthy was served drinks one at a time during the five hours at BXL and that McCarthy would eventually display signs of intoxication that should have alerted BXL's employees of

4

this." Gilman asserts that BXL has the burden of proving that it did not serve a visibly intoxicated person, which BXL failed to do. Gilman requests that the Court take judicial notice, pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, of a research paper by Aaron White, Ph.D., on memory, blackouts and the brain, published pursuant to a grant by the National Institute on Alcohol Abuse and Alcoholism, and "the conclusion of Dr. White's research on blackout and its effects."

In support of her opposition to the motion, Gilman submitted a declaration by her expert witness, Saperstein, who stated that he has "qualified as a toxicological expert" in various courts. Saperstein stated that "[b]ased on McCarthy's drinking history, and the fact that this was a binge event, it would be reasonable to assume that McCarthy consumed, at BXL, the equivalent of nine 16 ounce servings." Saperstein concluded that "McCarthy's reaction to the alcohol would indicate that it impacted him as an 'average normal' drinker and not an experienced . . . drinker." According to Saperstein, "[a]n average normal drinker would have manifested visible signs of intoxication at .10% commencing at 7:55 p.m. at BXL."

*Movants' Reply*

The movants assert that Saperstein's conclusion that McCarthy consumed the equivalent of nine 16 ounce servings at BXL has no basis in fact because McCarthy only consumed Stella Artois beer at BXL, and eight of those were listed on BXL's guest check. As the plaintiff admits that Chadwick drank two or three of those beers during the five-hour period, McCarthy could not have had any more than five such beers, a rate of consumption of about one beer per hour. The movants contend that, regardless of how much alcohol McCarthy consumed at BXL, no evidence exists that McCarthy became visibly intoxicated while he was at BXL. Moreover, all McCarthy's companions at BXL stated they did not observe that McCarthy was visibly

intoxicated.

The movants maintain that McCarthy was a heavy drinker and had a high tolerance for alcohol. They assert that merely having "a buzz on" and becoming more talkative and lively are not signs of visible intoxication. The movants contend that,"[i]f that was the law virtually every bar in the State would be in perpetual violation of the Dram Shop Act with regard to most if not all of its customers." The movants assert that the plaintiff's contention that McCarthy experienced a blackout ten minutes after he left BXL "is specious and belied by McCarthy's unequivocal testimony that he was not in a blackout period when he arrived at Envy," and if he "had begun his blackout period ten minutes after he left BXL, then he would have no recollection of being at Envy." However, McCarthy "has a clear recollection of arriving at Envy," and that "he was not drunk upon arrival there," or while having a drink at the Envy bar, but became drunk later that night. According to the movants, even assuming that McCarthy's blackout period began ten minutes after he left BXL, that would not constitute evidence that he was visibly intoxicated at BXL. The movants assert that Sponseller's statement that "we were all technically drunk" is not synonymous with "visibly intoxicated."

## UNDISPUTED FACTS

At the time of the March 23, 2011 automobile collision, McCarthy was 37 years old and engaged in binge drinking on a weekly basis; he would drink alcohol until he could not recall anything. At BXL, a large Stella Artois beer is poured into a 50 centiliter glass, which is about one pint of beer. The McCarthy party purchased eight large Stella Artois beers at BXL. Michiels, the principal of BXL, was on duty as the sole bartender at BXL, in the evening of March 22, 2011. Michiels had been trained in alcohol awareness.

***Plaintiff's Request for Judicial Notice***

"The Court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "The court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

Although Gilman in her opposition to the instant motion requests that: (1) "a research paper published by the National Institute on Alcohol Abuse and Alcoholism pursuant to a grant on memory, blackout and the brain by Aaron White, Ph. D."; and (2) "the conclusion of Dr. White's research on blackout and its effects" be judicially noticed, she failed to supply the Court with the necessary information, as required by Fed. R. Evid. 201(c)(2). Not only did Gilman fail to provide the research paper, requested to be judicially noticed, but she also failed to provide the title of that research paper, the date of its publication or any other information from which the paper might be identified. Moreover, Gilman failed to provide "the conclusion of Dr. White's research on blackout and its effects" requested to be judicially noticed. Accordingly, Gilman's request, for judicial notice to be taken, is denied.

**Legal Standard**

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A "dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In determining whether a genuine issue as to any material fact exists, a "district court is required to resolve all ambiguities and draw all

factual inferences in favor of the party against whom summary judgment is sought." St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir. 2000). Additionally, "the court is not entitled to weigh the evidence" and "if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Id.

The Dram Shop Act provides:

> Any person who shall be injured in person, property, means of support, or otherwise by any intoxicated person, or by reason of the intoxication of any person, whether resulting in his death or not, shall have a right of action against any person who shall, by unlawful selling to or unlawfully assisting in procuring liquor for such intoxicated person, have caused or contributed to such intoxication; and in any such action such person shall have a right to recover actual and exemplary damages.

New York General Obligations Law § 11-101(1).

"No person shall sell, deliver or give away or cause or permit or procure to be sold, delivered or given away any alcoholic beverages to . . . [a]ny visibly intoxicated person." New York Alcoholic Beverage Control Law § 65(2). "The 'visibly intoxicated' standard was specifically crafted to limit the tavern keeper's exposure and to preclude the imposition of a regulatory or monetary penalty when 'he or she had no reasonable basis for knowing that the consumer was intoxicated.'" Romano v. Stanley, 90 N.Y.2d 444, 449, 661 N.Y.S.2d 589, 591 (1997) (citation omitted).

Visible intoxication of a customer can be established by circumstantial evidence. See Adamy v. Ziriakus, 92 N.Y.2d 396, 401, 681 N.Y.S.2d 463, 465 (1998) ("[T]he failure to provide direct proof of visible intoxication . . . is not itself dispositive" because circumstantial evidence may be used to establish that element of the statute). The Dram Shop Act must be "construed narrowly." D'Amico v. Christie, 71 N.Y.2d 76, 83, 524 N.Y.S.2d 1, 3 (1987). "To establish a cause of action based on negligent hiring and supervision, it must be shown that 'the

8

employer knew or should have known of the employee's propensity for the conduct which caused the injury.'" Jackson v. New York University Downtown Hospital, 69 A.D.3d 801, 801, 893 N.Y.S.2d 235, 236 (App. Div. 2nd Dep't 2010) (citation omitted).

*Application of Legal Standard*

Except for several undisputed facts found by the Court above, all other material facts concerning the elements of the Dram Shop Act claim are disputed, including whether McCarthy was visibly intoxicated while at BXL, on which the movants' and Gilman's experts disagree. Contrary to the movants' uncontested contention that, on March 22, 2011, McCarthy was at BXL from 4:30 p.m. to 9:30 p.m., conflicting evidence about the time when McCarthy arrived at and departed from BXL exists. When asked, at his deposition, what time he arrived at BXL, McCarthy testified: "I recall it being between 4:00 and 5:00. Probably 4:30, I would have to say." Chadwick testified that he could not "put an exact time" on when he met McCarthy to go to BXL, on March 22, 2011, "but it could be 5:00, 6:00 p.m." Chadwick testified that he and others stayed at BXL "[p]robably a couple of hours." The BXL check No. 7163, dated "03/22/11," shows it was: (i) started at "5:30 pm" for two guests at table No. 55; (ii) submitted for payment to Sponseller's American Express at "03/22 21:02"; and (iii) paid at "9:13 pm." When asked what time he left BXL, McCarthy stated "I thought it was around 9:30." McCarthy also testified that he "probably had more than five" beers at BXL, during "[t]he four hours I was there." When Chadwick was shown the BXL check, indicating the time period from 5:30 p.m. to 9:13 p.m., and was asked whether that was the time period he and others stayed at BXL, he stated "Probably, yes." Thus, it is not undisputed that McCarthy arrived at BXL at 4:30 p.m., on March 22, 2011, and the time of his departure from BXL is disputed.

9

Who drank what beverage(s) from the list of beverages charged on the BXL check is disputed. The movants contend that it is undisputed that Chadwick consumed two or three of the eight large Stella Artois beers purchased by the McCarthy party. However, that contention is internally disputed as it is not known whether Chadwick consumed two or three beers. The number of alcoholic beverages each person consumed at BXL, which is disputed, is critical to determining whether BXL sold or assisted in procuring alcohol for McCarthy while he was visibly intoxicated.

Sponseller stated, when asked at his deposition, what made him believe that McCarthy was drunk: "Because we had been drinking. I know I was at BXL with them, we were drinking beers there. I didn't count how many beers he was drinking, but we were there for a few hours. . . . I don't know anyone who could go four hours, even if you have a beer an hour and not be buzzed." During his deposition, McCarthy testified that, when he consumed his fourth or fifth pint of beer at BXL, he was "[p]robably more energetic," "starting to get a buzz," became "more entertaining and vocal," but he would not lose inhibitions, "[n]ot outrageously. Not to any extent that I would embarrass myself." During a colloquy, McCarthy testified as follows:

> Q. Okay. And when you were finished at BXL, how would you describe your alcohol consumption, as far as how you felt?
> A. I was beginning to have a buzz, for sure, when I left there.
> Q. Were your words slurred at all?
> A. That's difficult to say. Maybe.
> Q. Did you have trouble walking?
> A. I don't think so, at that point, no.
> Q. Did you have any trouble thinking?
> A. I don't know.

McCarthy was asked during his deposition: "When did you become drunk?" He answered: "I remember going to the ATM. . . . Very little of the evening after getting back to Envy, it's - - I can't recall much after that. . . . I was pretty much in blackout." McCarthy testified that he

would have started to slur his words and be impaired "during Envy, after the ATM." In light of: (a) McCarthy's admitted blackout at or around the time he retrieved cash from an ATM machine, on March 22, 2011; and (b) the Chase bank screen printout showing an ATM transaction at 993 Second Avenue, New York, New York, and indicating that McCarthy retrieved $500, on March 22, 2011, at "21:40:13," from his HSBC Premier MasterCard, as well as other disputed facts mentioned above, including the period of time McCarthy stayed and consumed alcohol at BXL, the Court finds that an issue of material fact exists concerning whether McCarthy was visibly intoxicated at BXL. Accordingly, summary judgment is not warranted on the Dram Shop Act claim. Gilman abandoned her negligent supervision and hiring claim. Therefore, dismissing that claim is warranted.

**Conclusion**

For the foregoing reasons, the motion for summary judgment, made by BXL and Michiels, Docket Entry No. 84, is: (a) denied with respect to the Dram Shop Act claim and crossclaims against them; and (b) granted with respect to the negligent supervision and hiring claim against Michiels.

Dated: New York, New York
      May 7, 2015

SO ORDERED:

_____
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

cynthiagilman2.mo